O’NIELL, J.
This is an action for $15,000 damages for personal injury suffered by the plaintiff.
While he was riding on a wagon on the public road, a piece of barbed wire attached to a fence and extending into the public road caught his foot and cut it off at the ankle joint.
The action is founded upon the allegations that the fence, of which the wire had formed a part and to which one end was attached, belonged to the defendants Thomas C. Bush and Miss B. V. Bush, and was on their property, under the management of Thomas C. Bush; and that the defendants were guilty of gross negligence and had disregarded the safety of travelers along the public road, in allowing their fence to be and remain in a condition of danger to passers-by. The plaintiff alleged that the defendants had permitted the wire to remain, for several months before the accident, in coils in the public road, a menace to travelers passing there; but that he (the plaintiff) was not aware of the danger and was not guilty of any negligence in failing to avoid the accident.
In their answer, the defendants admitted— and the evidence shows — -that the plantation adjoining the public road at the place of the accident was the property of one of the defendants, Thomas O. Bush, and was under his personal management; but they denied that the barbed wire on the fence separating the plantation from the public road had become loosened from the fence posts or was lying in the public road before or at the time of the accident. They alleged that the driver of the wagon on which the plaintiff was riding at the time of the accident was racing with the driver of another wagon, and, in attempting to pass the other wagon, drove one of the wheels of his wagon against the fence and pulled off the wire, which inflicted the injury to the plaintiff. They alleged therefore that the accident was due to the negligence and recklessness of the driver, who was not in the employ of the defendants and for whose conduct they were not responsible. They alleged that, if the wire had become loosened from the fence and was lying in the public road before or at the time of the accident, the plaintiff and the driver of the wagon should have seen and avoided it, and, if it was hidden by the dust in the road, that also was caused by the fast and reckless driving by the men, for whom the defendants were not responsible. In that connection, they alleged that the plaintiff and the driver of the wagon on which he was riding at the time of the accident, and the driver of the other wagon, were all in the employ of the same person, were engaged in the same work, and were therefore fellow servants.
The case was tried without a jury. Judgment wasi rendered in favor of the defendants, rejecting the plaintiff’s demand, and he has appealed.
The evidence does not sustain the defend *183 ants’ allegation that the driver of the wagon on which the plaintiff was riding at' the time of the accident was racing with, or attempting to pass, the other wagon on the road. The proof is that the wagon on which the plaintiff was riding did not strike the fence or leave the beaten path in the public road.
The men on both wagons were engaged in the hauling of hay from the farm of their employer. They had delivered a load to the warehouse, where they received a telephone message from their employer to hurry back to the farm; and they were returning on the empty wagons when the accident occurred. The horses were trotting briskly, galloping at times, but were under the control of the driver’s, who were not engaged in a race. The road was very dusty. The front wagon was drawn by four horses and was raising a cloud of dust. The wagon on which the plaintiff was riding was drawn by two horses and was traveling at a distance of about 30 or 40 feet behind the other wagon. The vehicles consisted of the running gear of ordinary farm wagons, from which the bodies had been removed and on which two planks formed the bed. The rattling of the loose planks made such a noise that two of the witnesses who testified in the case thought the horses were running away.
The plaintiff was seated on one of the planks forming the bed of the wagon, about midway between the axles, with his feet hanging over, between the front and hind wheel. He testified that, when the coiling wire appeared over the front wheel, he dodged to avoid its striking his neck or head, and called to the driver to stop; and, in an instant, without his realizing what was happening, his foot was caught in the wire and cut off. The noise of the wagons prevented the driver from hearing the plaintiff’s first cry. He screamed twice again, and the driver stopped the wagon immediately. Strange to say, the plaintiff was not pulled off of the wagon. His foot was found in his' shoe, in the road, a short distance behind the wagon, and the top part of his sock, which had been cut in two, remained caught in the wire that had sprung back to the side of the road.
The surgeons who attended the plaintiff, one of whom was on the scene very soon after the accident, were unable to explain how the wire had severed the fbot at the ankle joint without pulling the man off of the wagon. They testified that the severing of the foot must have been done with a very quick stroke of the wire. Hence it is argued by the defendants’ counsel that the teams must have been running at a very fast gait. Our opinion is that the speed at which the plaintiff was traveling could not possibly have been fast enough to give the plaintiff’s foot such a quick stroke against the wire as to cut it off in that way. The only possible explanation of the severing of the foot at the ankle joint without pulling the plaintiff off of the wagon is that the end of the wire caught on the wagon and the plaintiff’s ankle was caught in a kink in the wire. Be that as it may, the theory that the man’s foot was cut off by a quick stroke of the ankle against a loose wire cannot destroy the positive proof that the drivers were not running a race nor the teams running away.
Four disinterested witnesses, whose business required their traveling along the public road at the place of the accident nearly every day, testified that they had seen loose strands of wire, extending from the defendant’s fence into the public road, on several occasions before the accident. Two of them testified that the ends of the wire were lying loose and in coils or kinks, beside the road, in more than one place near the scene of the accident; and one of them testified that his horse came very near being entangled in the wire at the place of the accident, some days or weeks before the plaintiff got hurt. The *185 evidence shows that the identical wire that cnt oft the plaintiff’s foot was loose for a distance or length of about 36 feet and was coiled up in a ball at the loose end; that wire had been lying, sometimes in the beaten path and sometimes on the side of the road, several weeks, possibly months, before the accident.
The defendant Thomas C. Bush, who went to the scene of the accident immediately after it happened and endeavored to ascertain the cause of it, testified that he thought cattle had put their horns through the fence and pulled off the wire. He had had the fence renovated a short time before the accident. Some new posts had been put in, and new wire had been put on in place of that that had rusted out or had been pulled off; from which it might be inferred that the ends of the wire were left dangling from the posts when the fence was repaired.
The defendants testified that they were not aware that any loose ends of wire extended from their fence into the public road, or that the fence was in any condition of danger to passers-by, before this accident occurred ; and there is no evidence to the contrary. The defective fence, however, was in front of the defendants’ residence; the gate being immediately in front of, and about 150 yards from, the front porch, and the scene of the accident being about 200 yards from the gate.
Our opinion is that the duty imposed by law upon the defendant Thomas C. Bush to maintain his property in a condition of safety to travelers along the public road made him responsible for his failure to know of the dangerous condition of his fence, that had existed such a long time, and had been observed by several travelers on the public road, before the accident.
In the case of Tucker v. I. C. R. Co., 42 La. Ann. 114, 7 South. 124, where the defendant was held liable for the death of a passerby who was killed by the collapse of the defendant’s shed, it was held that the defendant’s ignorance of the dangerous condition of the premises, being due to a lack of prudent attention, did not excuse the defendant. Citing Barnes v. Beirne, 38 La. Ann. 280, it was said that the owner was bound to know the condition of his property; and the fact that the condition of danger had been produced by trespassers on the premises, without the defendant’s knowledge, did not exempt the defendant from liability for the resulting injury to an innocent passer-by. Citing that case and that of Lorenz v. City of New Orleans, 114 La. 804, 38 South. 566, it was said in an opinion handed down this day, in Serio v. American Brewing Co. (No. 20972) 74 South. 998,[1] that negligent ignorance of the condition of one’s property was equivalent to actual knowledge.
The liability of the defendant Thomas Q. Bush is imposed by the provisions of the Civil Code that every act whatever of man that causes damage to another obliges Mm by whose fault it happened to repair it; and that men are responsible for the damage occasioned, not only by their own acts, but by the things which they have in their custody. Articles 2315 and 2317. Our opinion is that the liability of the custodian of a thing for damages for injury caused by the thing in h-is 'custody is not limited to what is committed actively by the thing, but extends to injuries resulting from a dangerous condition of an inanimate thing if that condition was due to the fault of its owner or custodian; and, in that sense, fault means negligence. B. C. C. 2316. Other provisions of the Code expressly declare that a person is responsible for damages caused by the acts of those for whom he is answerable, by the acts of his children or servants, by the act of an insane person of whom he is curator, by the act of a scholar or apprentice of whom he *187 is the teacher or artisan, or by the act of an animal of which he is the possessor or owner. R. C. C. 2317, 2318, 2319, 2320, and 2321. And other provisions of the Code declare that the owner of a building is answerable for any damage caused by its ruin or fall, or by that of any part of the material composing it, if the injury was the result of neglect to repair the building, or the result of a vice in its original construction. R. C. C. 670 and 2322. On the principle that the owner must maintain his premises in a condition of safety to his neighbors and to persons passing, it has been held quite often that an individual or corporation is liable in damages to any person injured by a dangerous animal kept or permitted to remain on the premises. See Serio v. American Brewing Co. (No. 20972, decided this day) supra, citing Vredenburg v. Behan, 33 La. Ann. 639; Holmes v. Murray, 207 Mo. 413, 105 S. W. 1085, 17 L. R. A. (N. S.) 431, 123 Am. St. Rep. 386, 13 Ann. Cas. 845; Barrett v. Malden & Melrose R. Co., 3 Allen (Mass.) 101; Chicago & Alton R. Co. v. Kuckkuck, 197 Ill. 308, 64 N. E. 358; and Keenan v. Gutter Percha & Ribbon Mfg. Co., 120 N. Y. 627, 24 N. E. 1096.
In the case of Williams v. Louisiana Electric Light & Power Co., 43 La. Ann. 295, 8 South. 938, the defendant was held liable in damages for maintaining a wire over a highway so low that a wagon carrying a load 16 feet high struck the wire, knocked down the pole, and injured the driver. of the wagon. It was held that the wire was an obstruction to the highway, which should have been left safe for travel and transportation. That case was cited with approval in Claussen v. Cumberland T. & T. Co., 126 La. 1087, 53 South. 357, where the defendant was held liable in damages for injury inflicted upon a traveler on the public road, whose horse and buggy became entangled in the defendant’s telephone wire, that had been blown down in a storm and had not been removed from the road within a reasonable time. In that ease, it, is true, the defendant had been notified that the wire obstructed the public road; but, from the cases cited above, it appears that negligent ignorance is equivalent to actual knowledge.
The fact that the accident that happened in this case was an extraordinary one does not relieve the defendant from liability. In Payne v. Georgetown Lbr. Co., 117 La. 983, 42 South. 475, where the negligent act of a servant of the defendant caused injury to the plaintiff, it was said to be no defense that the particular injurious consequence was unforeseen, improbable, and not to have been reasonably expected, so long as it was the natural consequence of the negligence of the defendant’s servant. Quoting Wharton’s Law of Negligence (2d Ed.) par. 77, it was observed that the consequences of negligence are almost invariably surprises; that a man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief be only one in a thousand, if the mischief or injury does occur, the person to whose negligence it is imputable is liable in damages.
Our conclusion is that the defendant Thomas C. Bush is liable in damages for the injury which the plaintiff suffered in consequence of the defendant’s negligence, in failing to know of the dangerous condition of his fence, and in permitting it to remain a menace to travelers on the public road. And we fix the amount of the damages at $5,000.
The judgment appealed from is annulled and set aside, and it is now ordered, adjudged, and decreed that the plaintiff, Jesse Atkins, recover of and from the defendant Thomas O. Bush the sum of $5,000 and the costs of this suit.

 Post, p. 290.