(75 South. 738)

No. 21396.

LANIER v. HAMMOND LUMBER CO., Limited.

(May 14, 1917. Rehearing Denied June 11, 1917.)

*(Syllabus by the Court.)*

1. RAILROADS ☞303(2)—RIGHT OF WAY—PERSONAL INJURY—LIABILITY.

A railroad company that enters into a contract with a vendor of its right of way to keep open a country road, and place a bridge thereon for the use of the vendor and the public thereby binds itself to maintain said crossing in good order and condition, and it also invites the public to use such crossing. It is responsible in damages to any person who suffers injury at said crossing because of the defective condition thereof.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 960.]

2. EVIDENCE ☞213(1)—ADMISSIONS—OFFER OF COMPROMISE.

An unaccepted proposal to take less than is due to avoid suit does not bar a recovery of the full amount of legal damages, and such proposal should not be received in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745, 748–750.]

*(Additional Syllabus by Editorial Staff.)*

3. DAMAGES ☞131(6)—PERSONAL INJURY—INADEQUATE DAMAGES.

A verdict of $250 for the breaking of two ribs and a contusion of the hip and ankle on one side, which were not shown to be permanent, though small, could not be said to be inadequate.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 370.]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

Action by D. B. Lanier against the Hammond Lumber Company, Limited. Judgment for plaintiff, and defendant appeals, and plaintiff, answering, asks for judgment for the original amount of his claim. Judgment affirmed.

R., C. & S. Reid, of Amite, for appellant. J. H. Inman, of Amite, for appellee.

SOMMERVILLE, J. Plaintiff alleges that while riding horseback across a public crossing of a public road, locally known as the lower Robertson crossing, of the railroad used for logging purposes and owned by the defendant he was injured through the faulty and negligent construction and maintenance of said crossing by the defendant; and he further alleges that while crossing the track, which crossing appeared to be apparently safe, his horse's rear foot became wedged between an exposed spike and the iron rail of the railroad; that the horse and rider were both violently thrown as a result of the wedging of the horse's foot; that plaintiff was thrown against a log; and that several of his ribs were broken, his back was sprained, and that his left knee and ankle were sprained; that he was confined to his room for more than four weeks; that he suffered great mental anguish and extensive physical pain; that he has been permanently injured, and has been unable to work since the day of the accident, and he claims $2,000 for these damages and $104 for doctors bills,

drugs, and loss of time from his labor, at $2.25 per day.

The defendant filed an exception, alleging that the petition stated no cause of action. It was properly overruled.

Defendant answered, denying that there was a road crossing at the place indicated in plaintiff's petition, and that it had constructed a crossing at that point. It alleged that the crossing referred to was never a public crossing, "it being only a banking ground for respondent's logs"; that if plaintiff went upon defendant's track at that point, he was a trespasser, and respondent was not responsible to him for said alleged injuries." Defendant denied that plaintiff was injured, and alleged, if found to have been injured, that the injury was due to the negligent way of handling the horse he was riding, which caused it to fall with him; that the horse, to the knowledge of the plaintiff, was "very nervous, high-strung, difficult to manage, and dangerous, and therefore required certain skill in handling him, but instead of handling said horse skillfully, when he stepped upon respondent's track, the plaintiff handled him carelessly and negligently, as above stated, and therefore himself was responsible for the accident for which the respondent is in no wise responsible."

There was judgment in favor of plaintiff against defendant for $250, with interest, and defendant appeals. Plaintiff has answered the appeal, and asks for judgment for the original amount of the claim.

[1] Defendant states in its brief:

"The position of the defendant is that it was under no obligation to maintain a crossing at the point where the plaintiff was injured. This was no public road, had never been worked by the parish authorities, and was near the public road on the west or south, and was very little distant from the other public road on the north and east."

The road was not a public road of the parish; but it was a roadway which had been used by the public for many years, as testified to by the residents of the village.

The defendant says:

"Our contention is that by abandoning the public road and using the private road or trail and crossing of the defendant's track at the log bank, plaintiff became a mere licensee, and defendant owed him no duty except to refrain from willfully or wantonly causing him injury. The log bank was built for the private use of defendant company, and defendant never, by incitement, allurement, or inducement, caused or invited any person to come upon its log bank."

Defendant further says:

"The Hammond Lumber Company was not bound to maintain this crossing over a private trail within 250 yards from the public road, in a sparsely settled community, and within 500 or 600 yards of another crossing in another direction."

Cyrus Robertson, a witness for the plaintiff, testified that he had owned the property where the railroad is situated, and that he had sold to the defendant company "a right of way over what is locally known as the lower Robertson road"; and that it had agreed to put a crossing on that lower Robertson road; and that defendant had put the crossing down in accordance with the agreement made with him; and that he had frequently used the same; and that the dirt road, upon which the crossing was put, had been used for 25 years; that it had been used by the public without opposition on the part of the defendant in so far as he knew. His testimony is corroborated by that of I. W. Ott, chief of police of Hammond, who had been in the employment of the defendant company. He testified, on behalf of plaintiff, that it was his duty to put crossings over the railroad tracks of defendant company; and that he had, at one time, put the crossing at the place where the plaintiff was injured; and that it was "a good crossing, made out of two by eights or two by tens." He further testified that the road was used by the neighbors, and that during his employment with the company the defendant did not restrict the public in the use of the crossing; that it was put there for anybody's use who wanted to use the road. An-

other witness for plaintiff testified that the defendant company had, in the year 1913, plowed up the road and put in some poles at the crossing referred to in the petition. Several other witnesses testified, on behalf of the plaintiff, that the road had been used by the public for a long number of years, and that the bridge in question had for several years been in bad repair.

The preponderance of evidence is in favor of the allegation made by the plaintiff, to the effect that while the road referred to was not a public road, it had been used for more than 25 years by the public, and that the defendant company, in obtaining its right of way, stipulated and agreed to put a bridge at the particular crossing where plaintiff was injured, and had done so, and that it had made a feeble attempt to keep said crossing in repair for a little while, but that it had neglected to do so for some time before the accident.

.The evidence shows that the plaintiff was injured in the manner alleged by him, caused by an exposed spike in one of the cross-ties, which caught the hoof of plaintiff's horse, causing him to fall, and to throw the plaintiff.

Having undertaken to construct the bridge over the railroad for the use of the public in general, it was incumbent upon defendant to keep said crossing in good order and repair. This it failed to do, and through its fault and negligence, plaintiff was injured.

In Kelly v. Southwestern Railway Co., 28 Minn. 98, 9 N. W. 588, it is said:

"A railroad company is liable for injuries caused in crossings, or structures thereat, which it is bound to maintain." 4 Am. & En. Ency., 116, par. 11, note 6.

"A railroad company is bound to know of the effect of time and weather upon its appliances, and it should, by proper inspection and timely changes, keep them safe." Williams v. Electric Co., 43 La. Ann. 300, 8 South. 938.

Lawson v. Shreveport Waterworks, 111 La. 74, 35 South. 390:

The "owner of land, over which the public has been allowed, for a number of years to use a road leading across a small bayou, impliedly invites the public to make use of a bridge which it constructs at the crossing and concerning which he gives no notice of any kind.

"The plaintiff, therefore, by invitation of the defendant, was entitled to cross the bridge and traverse the road over the land of the defendant company and to use the bridge or crossing constructed by it for the benefit of the public."

In the Lawson Case, supra, the court say:

"Where one knowingly leaves open his property under circumstances calculated to lead others to think that they are invited to use it, he impliedly licenses its use by the public, and assumes the obligation to see that it is kept in a reasonably safe condition."

The injury to plaintiff having been caused through the negligence and fault of the defendant company, the latter is required to repair it.

[3] The district court allowed plaintiff $250 damages. He has asked for an increase of the amount to $2,104, as claimed by him in his petition.

The evidence shows that two ribs of plaintiff were broken in the fall, and that there was a contusion of the hip and ankle of the left side. The testimony with reference to the injuries is not satisfactory. The plaintiff testifies that he broke two or three ribs, and that his hip and ankle were injured by the fall, and that he consulted a physician. But, the physician was not called as a witness, and plaintiff is not very clear as to the extent of the injuries to him. There is nothing to indicate that these injuries were permanent. After consulting a physician, he says:

"I sat there [at home] until I got to where I could lay down at night, and you know how a man is when he is unable to do anything, just walks about from place to place."

In reference to his ankle, he answered:

"I would think it in a bad condition now, at times * * * I mean when I do a lot of walking or stand on it, it is swollen at night," and, "It pains."

.The judge who saw and heard the plaintiff testify was in a better position, under all

the circumstances, to determine the extent of the injuries to plaintiff than this court can be; and, although the amount allowed plaintiff is small, it cannot be said to be clearly too small.

[2] There was offered in evidence by defendant a letter written by counsel for plaintiff to defendant proposing a compromise of his claim for damages against the latter for $250. According to the record, no objection was made to the letter, although it is stated in the brief of the defendant that objection was made to its being received in evidence.

The objection should have been sustained. There is a statement in the letter as follows:

"We are authorized to accept in full settlement of the claim the sum of $250.00. Mr. Lanier and ourselves both feel that this sum would be commensurate with the injury."

This cannot be said to be a clear admission by the plaintiff, inasmuch as it formed a part of a written proposition to compromise. The letter distinctly states that it is an offer to compromise, and, it will be presumed that the offer was made without prejudice, and under a tacit agreement or understanding that no advantage should be taken of it by the defendant. West v. Smith, 101 U. S. 263, 25 L. Ed. 809:

"Public policy, if nothing else, would seem to require such a protective rule, for without it, no step could ordinarily safely be taken toward an amicable adjustment of a controversy." Elliott on Evidence, vol. 1, par. 240 et seq.

Judgment affirmed.