Courts ☞231(52)—Case transferred, where plaintiff's demand cannot reach jurisdictional amount.

Where plaintiff's demand for damages cannot reasonably amount to lowest limit of Supreme Court's jurisdiction, although every fact in petition be accepted as true, case will be transferred to Court of Appeal.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Action by John C. Claverie against Wm. A. Lorenz and others. Judgment for defendants, and plaintiff appeals. Transferred to Court of Appeal.

James Barkley Rosser, Jr., of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellees.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LECHE, J. Plaintiff seeks in this suit to recover the custody and possession of certain movables which he values at $375.10, and he also prays for the recovery of $5,000 damages. Plaintiff's demand was refused, and his suit dismissed by the trial court, and he has appealed.

Appellee has made no appearance in this court.

A mere inspection of the record shows that plaintiff's demand for damages is grossly exaggerated. Accepting as true every fact which he alleges in his petition, a most liberal award could not reasonably amount to the lowest limit of our jurisdiction.

Wherefore it is ordered that plaintiff and appellant pay the costs of the present appeal to this court, and that this appeal be transferred to the Court of Appeal for the parish of Orleans upon plaintiff's filing the record in said court within 15 days from the finality of this decree.

---

**(100 South. 428)**

**No. 24529.**

## BROOK v. INTERURBAN MOTOR TRANSP. CO. et al. ⸜

(April 30, 1924.)

*(Syllabus by Editorial Staff.)*

1. Carriers ☞318(7)—Finding that taxicab company and owner of colliding automobile were both at fault sustained in passenger's action for injuries.

In action against taxicab company for injuries sustained in a collision between the taxicab, wherein plaintiff was riding, and defendant's automobile, evidence *held* to sustain finding that taxicab company and driver of automobile were both at fault.

2. Damages ☞131(3)—$2,025 for broken bone of hand, cuts and bruises, pain, and medical expenses held excessive by $1,000 as to injuries.

$1,500 for personal injuries, $500 for pain and suffering, and $25 for medical expenses, *held* excessive as to personal injuries by $1,000, where plaintiff sustained shock, was cut about face and neck, and had simple fracture of bone of hand.

Appeal from First District Court. Parish of Caddo; J. R. Land, Judge.

Action by I. J. Brook against the Interurban Motor Transportation Company and another. Judgment for plaintiff, and defendants appeal. Amended and affirmed.

J. S. Atkinson and Alex F. Smith, both of Shreveport, for appellant Morefield.

Foster, Looney, Wilkinson, & Smith, of Shreveport, for appellant Interuban Motor Transp. Co.

Clem V. Ratcliff, Hall & Bullock, and Pike Hall, Jr., all of Shreveport, for appellee.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ. LAND, J., being

recused, ROGERS, J., of Division A, took part.

LECHE, J. Plaintiff, who was a passenger in a taxicab belonging to the Interurban Motor Transportation Company, was painfully injured in a collision between the taxicab and a Cadillac automobile belonging to W. H. Morefield, and he sues for damages resulting from his injuries, both the Interurban Motor Transportation Company and Morefield, and prays for judgment against them in solido, in the sum of $3,500.

The district court awarded him a judgment for $2,025 against both defendants. Defendants have appealed, and plaintiff, in an answer to the appeal, asks for an increase of the judgment in conformity with the prayer of his petition.

The collision took place in the city of Shreveport on Sprague street at the intersection of Beauregard street, on January 24, 1920, in the afternoon.

Sprague street runs east and west, and is intersected at right angles by Beauregard street. Morefield was driving his Cadillac towards the east, and S. C. Henderson, chauffeur for the Interurban Company, was going west. The taxicab was going down a 7 per cent. grade near the right-hand curbing at a speed variously estimated from 12 to 30 miles per hour, Henderson says 12 to 15 miles, and Morefield believes it was 30 miles. The Cadillac according to Morefield was going 10 to 12 miles per hour, and according to Henderson it was running 30 miles.

It is admitted by Morefield that he was traveling near the center of the street, and that on reaching the corner of Beauregard he says that he slowly turned to the left to go north into Beauregard street; Morefield further says that his curtains were up, and that he gave no signal with his arm to indicate his intention to turn; that he saw the taxi coming, but thought he had ample time to enter Beauregard street before the taxi could reach the intersection of that street. He further says that the taxi was coming at such a great speed that it collided with him and struck his Cadillac just back of the front right wheel, and thereupon he realized that he had made a mistake of judgment.

Henderson on the other hand says that the Cadillac was approaching on the wrong or left side of the street, and that it was suddenly turned in front of him, too late for him to avoid the collision.

E. T. Boone, a young man who seems to be totally disinterested in the outcome of this suit, was driving a milk delivery truck. He was going south on Beauregard street, and reached the corner of Sprague just in time to see the two automobiles approach and collide. He says that the taxi was running on the right side of the street at a speed of about 15 miles, that the Cadillac was in the center of the street and "kinda stopped" when it turned, then darted forward to pass ahead of the taxi, but was caught by the taxi near its front right fender.

Such are the salient facts in regard to the collision, as testified to by the three principal eye witnesses. We have no doubt that they were sincere and candid in presenting these facts to the court, but their testimony aptly illustrates how events that occur rapidly and unexpectedly are differently seen and appreciated by the average person.

The estimates of these three witnesses as to the speed and movement of the two automobiles is of doubtful value, but from that testimony and the admitted facts, certain conclusions may safely be drawn. The proximate cause of the collision was the turning of the Cadillac crossways in the path which the taxicab was entitled to follow along Sprague street. Morefield was undoubtedly at fault in thus blocking the right of way of the taxicab. He gave no signals, and it.

matters not that the taxicab may have been exceeding the speed limit fixed by the city ordinances. The contributory negligence of the chauffeur of the taxi did not excuse Morefield's negligence. It is not only reasonable, but strongly dictated by ordinary common prudence, that a person driving an automobile along a city street or any other much frequented highway, who wishes to alter his course, should exercise the greatest care and caution in so doing. There may be other automobiles behind and he should especially avoid getting into the path of automobiles coming from the opposite direction, for it is difficult and almost impossible in such a position to accurately determine the speed of the latter.

We cannot from the estimates of the witnesses say that the chauffeur of the taxicab was guilty of overspeeding, but there is evidence of other uncontradicted facts in the record which does convict him of such fault. When the two automobiles came in contact, the clash was so violent that plaintiff, who was sitting on the left rear seat of the taxi, and who had braced himself in anticipation of the shock, was catapulted forward with sufficient force to cause his head to crash through double panes of glass against the shoulder of the chauffeur. The Cadillac automobile, though much heavier than the taxicab, was skidded sideways several feet, and a young lady who was sitting on the right front seat of the Cadillac was dropped through the curtains upon the pavement. The taxi must have been going, according to the language of the young lady, at "90 to 1" to have caused these results.

[1] We are of the opinion that both of the defendants were at fault, and that the trial judge's findings to that effect are well sustained by the evidence in the record.

The only other question to be passed upon is the quantum of damages. That question always involves more or less embarrassment,

156 LA.—10

as its solution rests in the sound discretion of judges and juries. The only safe rule is to abide as much as possible by precedents. Plaintiff claims that he suffered much from the shock; that he was cut by broken glass about the face, ear, and neck; and that he lost a considerable amount of blood from these wounds. He further complains of a severe bruise to his right hand, the use of which he said at the time of the trial, in October, 1920, had been impaired.

Dr Darrow, an expert in X-ray photography, testified that the photographs he had taken indicated a simple fracture of the third metacarpal bone of the right hand, from which injury recovery can be expected.

Dr. B. Johns testified that he had examined plaintiff the day after the accident, and described the scratches he had found on plaintiff's face and neck. He said the cuts were superficial and not deep, and that the only effect of them would be a slight disfigurement. He further stated that there had been a good union of the broken bone in the hand, and that such injury would ordinarily cause no impairment in the use of the hand.

In Baucum v. Pine Woods Lumber Co., 130 La. 40, 57 South. 577, the plaintiff was allowed $2,000 for a fractured ankle, six weeks confinement to bed, necessary use of crutches for four or five months, and permanent impairment estimated at 50 per cent. of the mobility of the ankle joint.

In Cartwright v. Puissigur, 125 La. 700, 51 South. 692, badly mashed toes, bruises about the person, and pecuniary damage, amounting to over $100, were compensated in the sum of $500.

In these two cases the injury was to the foot, a part of the human body equally as necessary, though perhaps not as useful as the hand.

Other precedents cited in brief by one of the defendants, and maybe more appropriate to the present case, are Miller v. Tall Tim-

ber Co., 143 La. 269, 78 South. 555; Jones v. Tremont Lumber Co., 139 La. 616, 71 South. 862; Smith v. Minden Lumber Co., 114 La. 1035, 38 South. 821; Loyacano v. Jurgens, 50 La. Ann. 441, 23 South. 717; and Lanier v. Hammond Lumber Co., 141 La. 829, 75 South. 738.

[2] According to these precedents we believe that the award in the present case by the district court should be materially reduced. That court allowed plaintiff $500 for pain and suffering, $1,500 for personal injuries, and $25 for medical expenses, a total of $2,025. We believe the item of $1,500 for personal injuries should be reduced to $500, and, as thus reduced, that the judgment should otherwise be affirmed.

For these reasons the judgment of the district court in this case is reduced from $2,025 to $1,025, and, as thus amended, it is ordered that it be affirmed, appellee to pay costs of this court.