## THARPE et al. v. SIBLEY LAKE BISTE-NEAU & SOUTHERN RY. CO. et al.*

No. 4405.

Court of Appeal of Louisiana. Second Circuit.

Nov. 10, 1932.

Stewart & Stewart and John T. Campbell, both of Minden, and Barnette & Roberts, of Shreveport, for appellants.

Watkins & Watkins, of Minden, for appellees.

McGREGOR, J.

The Sibley Lake Bisteneau & Southern Railway Company is the lessee of a certain right of way and spur track in the village of Lanesville, which crosses a street or road in the said village known as Tharpe road. At the intersection of this spur track with Tharpe road, the defendant railroad has maintained a public crossing for many years. For drainage purposes wooden culverts were placed under this crossing, one on each side

of the track, close to the ends of the cross-ties. Tharpe road has been maintained as a public thoroughfare by the village of Lanesville almost ever since the village received its charter from the state. There is no proof in the record that it was ever formally dedicated or accepted as a public street, but it has been worked, graded, graveled, and used just the same as if it had been formally dedicated.

The wooden culverts referred to extended across the entire width of the road and were buried or covered several inches with dirt or gravel. It is uncertain as to just when these culverts were placed under the ground, but from the evidence it must have been several years ago.

On November 19, 1931, Mrs. Sheba O. Tharpe, the plaintiff, a young married woman, who lived on Tharpe road, had occasion to go to town to make some purchases. The railroad crossing was between her home and the business houses of the village, so that in making a trip of this kind it was necessary for her to cross this crossing twice. As she was returning home on this occasion, at about 10:30 o'clock a. m., and as she reached the culvert on the north side of the crossing on the opposite side of the railroad from her home, the ground underneath her left foot suddenly gave way and she fell unconscious to the ground, with her left foot going through the top of the wooden culvert to its bottom. The cause of the fall was the decayed and rotten condition of the plank which formed the top of the culvert.

Friends and relatives soon discovered the plight of the plaintiff and ran to her assistance. They picked her up, unconscious, and carried her to her home nearby. A physician was summoned at once, but it was several hours before he was able to respond to the call.

At the time of the accident plaintiff was a bride of nearly three months and was, and had been, pregnant with child for two months. In addition to the pain caused by her foot and limb going through the hole made in the top of the culvert when her weight caused it to break through, her entire body was twisted and turned and that naturally caused her severe pain and intense suffering. In the course of a few days she suffered a miscarriage as a direct result of her fall. She required the attention of her physician so often it became necessary to place her in the sanitarium at Minden, where she remained for two weeks. In order to give her relief from intense pain in her back, it was necessary to immobilize those parts with tape and bandages.

In her petition the plaintiff alleges in addition to causing her to miscarry, the fall caused a displacement of and injury to her female organs, and that she has been reduced from a robust and healthy woman to an invalid for life. Whether she is in a state of invalidism or not it was agreed by physicians on both sides that an abdominal operation would be required to restore her to a normal woman.

This suit is brought against the railroad company and the village of Lanesville, in solido, for the sum of $11,757, for damages growing out of the accident. Plaintiff's husband, Ernest Tharpe, joined her as party plaintiff as representing the community which bore the expense incurred on account of the accident.

At the trial in the lower court there was judgment in favor of the plaintiff Mrs. Sheba O. Tharpe for the sum of $2,250, and in favor of Ernest Tharpe, the husband, as representing the community, for the sum of $257. The judgment as rendered was against the two defendants in solido. They have appealed and the plaintiffs have answered the appeal and ask that the judgment be amended and raised to the sum originally prayed for.

Opinion.

In their brief and argument, counsel for the defendant railroad make a three-fold defense, viz.: (1) That plaintiff was not hurt in the way and manner in which she alleges she received her injury; (2) that if she was hurt at all, as she says she was, the injury was not serious; (3) that the defendant, being the lessee and not the owner of the track, is not liable for the damage.

We do not see how any one can doubt that the plaintiff was injured in the way that she claims. It is unquestioned that she did fall through a hole made in the rotten culvert, and that her husband and mother-in-law rushed to her assistance and found her unconscious. They pulled her foot and leg out of the hole and carried her to her home nearby. She suffered greatly and was not able to move herself for several days. While she was suffering from the immediate results of the fall and the injuries to her body, a miscarriage came on her. Her physician, who is a reputable, high class, experienced practitioner, says she had a miscarriage and that it was caused from the fall. We are bound to take his testimony as true, for we do not think he can be mistaken in his diagnosis.

A large part of plaintiff's claim for damages is based upon her allegations that the injured condition of her organs was caused by the fall. We do not think the proof warrants us in holding that this condition was caused in the first instance by the fall, though it may have been aggravated by it. From the evidence in the case, we think it is more than likely that the plaintiff had a considerable displacement of those parts before the accident, though she may not have been

aware of it. While her physician testified that at the time of the trial she had this condition, he never said at any time that it was the result of the accident. Two physicians testifying for the defendants said that the condition shows every indication of having existed for a much longer time than since the accident. It follows, therefore, that the plaintiff has not carried the burden of proving this portion of her claim.

■ As to the liability of the railroad company, we do not see how it can escape under the evidence contained in the record. This track was under its complete control for years. Its section foreman and track men had maintained it at all times. The very wooden culvert which caused the plaintiff to fall is shown to have been placed in position by its agents and employees.

These culverts were made and placed, one on each side of the track, at the crossing several years ago, and covered with dirt and gravel. From the time they were first placed until the accident they served to drain the water from that spot. There is no evidence that they were ever inspected or repaired. The fact that plaintiff's foot pushed a hole through the top proves how rotten they were, and the pieces produced as evidence bear out this conclusion.

It is a matter of common knowledge that ordinary wood buried in the ground, as were those culverts, rots in a relatively short time. That being true, there was an obligation on the railroad to inspect these culverts at intervals short enough to insure their repair or replacement before any one could be injured by falling through a rotten top.

■ It may be argued that the accident was unforeseen, and that many had passed over the same spot without injury, and that, therefore, the defendant should not be held liable for the damage. In the case of Atkins v. Bush, 141 La. 180, 74 So. 897, 899, L. R. A. 1917E, 809, in discussing a similar condition, the court said: "The fact that the accident that happened in this case was an extraordinary one does not relieve the defendant from liability. In Payne v. Georgetown Lbr. Co., 117 La. 983, 42 So. 475, where the negligent act of a servant of the defendant caused injury to the plaintiff, it was said to be no defense that the particular injurious consequence was unforeseen, improbable, and not to have been reasonably expected, so long as it was the natural consequence of the negligence of the defendant's servant. Quoting Wharton's Law of Negligence (2d Ed.) par. 77, it was observed that the consequences of negligence are almost invariably surprises; that a man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief be only one in a thousand, if the mischief or injury does occur, the person to whose negligence it is imputable is liable in damages."

The defendant railroad should have known of the rotten condition of this culvert, and, in failing to know of the dangerous condition, and in permitting it to remain as a menace to the public, it was guilty of negligence and therefore liable to the plaintiff for whatever injury she received on account of it.

The defendant village of Lanesville presents a three-fold defense, as follows: (1) That the defective culvert was wholly on the right of way of the defendant railroad, and that therefore the village had no right or authority over or responsibility for its condition, and that it would have been an act of trespass to go upon the property to repair the culvert; (2) that the village had no notice of the defective condition of the culvert, and that therefore it cannot be held responsible; (3) that the road or street of which the crossing was a part was not a public street, but was a mere private road.

■ We will consider these defenses in the inverse order. There is no evidence of a formal dedication or acceptance of Tharpe road as a street. But there is every evidence that the original owner of the land through which the road or street runs set it apart with the idea and intention of dedicating it as a street. Lots were sold and houses were built with reference to it, and the public generally used it. From the beginning, over twenty years ago the village authorities' graded and graveled the road, and since then, at varying intervals, they have continued to maintain it. In the case of Manderschid v. Dubuque, 29 Iowa, 73, 4 Am. Rep. 196, it was held that the act of the owner of lands within the limits of a city, in constructing a street over them and the necessary bridges suitable for public travel, and in throwing them open for public use, will be held to indicate an intention to dedicate the street to public use, in the absence of evidence showing a contrary intention.

In 20 L. R. A. (N. S.) 558 et seq. there is a long line of authorities cited to the effect that acceptance of a highway by a municipal corporation, to which it has been dedicated by the owner, may be sufficiently shown by public use of the road as a highway, and work done thereon by the proper authorities to repair the same. There are a number of authorities that expressly hold that, to show an acceptance of a street by the public, binding upon the city, it is not necessary to show any formal action of the city council to that effect.

McQuillin, Municipal Corporations, vol. 4, § 1687, under the heading of "How Intent Shown," lays down the following: "The intent to dedicate, as already explained, being necessary to constitute a dedication, such intent, or the absence of such intent, may be

evidenced in a multitude of ways. Indeed, it should be said that a dedication may be made in every conceivable way by which the intention of the party whether by words or acts can be manifested. Consequently the decisions uniformly hold that it may be shown from the declarations and acts of the owner, and from all of the surrounding circumstances as well. In short, any act or declaration on the part of the owner showing a present fixed, unequivocal purpose to dedicate, coupled with the use by the public in conformity with the purpose of the owner, is sufficient."

Section 2922 found in volume 7 of the same authority amplifies this statement of the law as follows:

"Where an injury occurs on a road or sidewalk, and it is sought to hold the municipality liable in damages, the first question which presents itself is whether the place of the accident was a public highway under the control of the municipality. If not a public highway, the municipality is not liable. However, if the municipality has exercised control over the way and improved or recognized it as a public street, that is ordinarily sufficient, and in such case the municipality will be estopped to deny that the way was a public street.

"The mode in which the street was established is immaterial, unless particular modes are provided by statute or charter, and the duty of a municipality to keep its streets and bridges in a safe condition for public travel is not confined to streets which have been formally ordained and opened. Furthermore, the question whether the title to the street is in the municipality is immaterial.

"The material thing which must exist is the act of the municipality inducing the people to believe that the way is a public one. As said by the supreme court of the United States in a leading case: 'If the authorities of a city or town have treated a place as a public street, taking charge of it and regulating it as they do other streets, and an individual is injured in consequence of the negligent and careless manner in which this is done, the corporation cannot, when it is sued for such injury, throw the party upon an inquiry into the regularity of the proceedings by which the land became a street or into the authority by which the street was originally established.'"

Considering the law as above expressed in connection with the evidence that the former owner of the land through which Tharpe road, or street, runs, and his successors in title have recognized this street and have built homes with reference to it, and that the village has used the street and worked it and has kept it graveled just as it has done all other streets, the village cannot be heard to deny liability on the ground that a formal dedication of the way as a public street has not been shown.

The next defense made by the village is that it had no notice of the defective condition of the culvert. "It is settled law that if a defect in the street is caused (1) by the act of a third person, or (2) the failure of the municipality to repair in general, it is not liable, unless it (a) has actual notice of the defect, or (b) of such facts and circumstances as would, by the exercise of reasonable diligence, lead a prudent person to such knowledge." Vol. 7, McQuillin, § 2996. In other words, notice such as to bind the municipality need not be actual notice, but may be constructive notice. "Constructive notice means notice which the law imputes from the circumstances of the case, and is based on the theory that negligent ignorance is no less a breach of duty than wilful neglect, and that negligence in not knowing of the dangerous condition may be shown by circumstances." McQuillin, § 3002.

The authorities of the village of Lanesville knew that Tharpe road had been maintained by the municipality for many years. They knew that a number of citizens used it all the time. They knew or ought to have known of the existence of these two wooden culverts. They are bound to have known that they were old, and in the very nature of things, were more than likely in a rotten or decayed condition. It was their duty to exercise reasonable care to discover this condition by inspection. The rotten condition in which the culvert was found to be is evidence of the fact that that condition had existed for a long period of time, and should have been discovered by inspection. In the case of Buckley v. Kansas City, 95 Mo. App. 188, 68 S. W. 1069, it was held: "A city must be presumed to know every fact in respect to the sidewalks that, by the exercise of reasonable care, it could have discovered."

In the case of Fitzgerald v. Concord, 140 N. C. 110, 52 S. E. 309, it was held that an active diligence upon the part of a municipal corporation is required to detect from natural decay in wooden structures, like bridges, plant sidewalks, and the like, which will necessarily become unsafe from age, but the most that ought to be required is the use of ordinary diligence by making tests and examinations, with reasonable frequency, to ascertain whether they are safe or not.

The evidence is clear that no inspection of this culvert had been made by the municipality in a year or more, and, owing to the nature and age of the structure, the authorities should have known that it was in an unsafe condition, and having made no effort to ascertain whether it was safe or not, negligence is established. The municipality in such a case is presumed to have constructive notice and

is obliged to use active diligence in making regular inspections. It is in evidence that the exposed end of this culvert showed to be decayed and rotten. The defense of want of notice is not, therefore, well taken.

The other defense urged is that the defective structure was wholly on the railroad right of way, and that the municipality not only had no obligation to repair it, but that it had no right to do so. That portion of ground that comprises the intersection of the railroad right of way and the street is an integral part of the street just as much as is any other part of the street. Or to put it another way, that area is street as much as it is railroad. The question as to whether a municipality is liable for damages on account of an injury incurred because of the defective condition of that part of the street that intersects a railroad right of way was raised in the case of Taake v. City of Seattle, 18 Wash. 178, 51 P. 362, and was decided in favor of the plaintiff. This situation is analogous to a railroad or street railway that runs down a street. It is the duty of the railroad to keep in repair that part of the street that it occupies, but that does not relieve the municipality from liability for any injury caused from or by a failure to keep the street in proper condition.

In the case of Cline v. Crescent City R. Co., 43 La. Ann. 327, 9 So. 122, 26 Am. St. Rep. 187, it was held that a party injured by a defect in a street, caused by a railroad company maintaining its tracks in the street by permission of the municipality, has a double action against both the city and the railroad company, regardless of the contract between them holding each as primarily responsible; and, when the city is compelled to pay damages, it has the right to recover against the railroad company in the same action if both are defendants, or if the city has properly brought in the railroad company by a call in warranty or a distinct suit.

It is clear that the village authorities should have required the defendant railroad to make this crossing safe, and, in failing to do so, they were negligent, and the village is liable in solido with the railroad company, even though the village may ultimately have a right to a judgment against the railroad if it ever is called upon to pay.

The plaintiffs answered the appeal and ask that the judgment in their favor be increased to the amount sued for. We have read the evidence carefully; as also the written opinion of the trial judge. The amount awarded appears to be fair to both sides and will not be disturbed.

For the reasons assigned, the judgment appealed from is affirmed with all costs.