*Margin note: MATILDA v. AUTREY.*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## R. KING *v.* B. BALLARD.

Plaintiff sued the defendant for slander. Defendant reconvened for damages resulting from plaintiff's slander of defendant. Plaintiff excepted to the reconventional demand. The exception was sustained because more than a year had elapsed between the filing of the reconventional demand, and the implied slander which formed the basis of it. *Held:* also, that if the slanderous words complained of by defendant had not been prescribed, yet as they had no necessary connexion with plaintiff's demand, they could not be made the basis of a reconventional demand.

In an action for slander the Supreme Court, considering both plaintiff and defendant to be in fault, reduced the amount of damages which the jury had found for the plaintiff.

APPEAL from the District Court of Caldwell, *Barry,* J.

*McGuire & Ray,* and *Hough,* for plaintiff. *Ogden & Leovy* and *Olcott,* for defendant and appellant.

Rost, J.* This is an action of slander. It was tried before a jury, who found for the plaintiff $14,000 damages, and the defendant has appealed from the judgment rendered on the verdict.

The parties to this suit are both men of character and intelligence, living on their estates in the vicinity of each other, and having, as country gentlemen usually have, a great deal of spare time upon their hands. They were once intimate friends, and delighted in doing each other friendly offices, but their kindly relations have long since ceased and we are pained to say that they have been too much disposed during the last few years to annoy and harrass each other. Viewing each others acts through the distorted medium of hatred, too prone to assign to those acts the worst motives, and loud in their mutual denunciations, in all places and at all times, they have for years disturbed the peace of the

---

* This judgment was rendered in 1852.

country, unsettled the moral instincts of the people, and become objects of censure, where their lives had previously been examples of the practice of the christian virtues upon which the laws which protect all, and society itself, rest for their support.

A brief notice of the origin and progress of this deadly feud, as it is disclosed by the record, is material to a proper understanding of the case.

The plaintiff was the Treasurer of the Parish of Caldwell, and had built the Courthouse of that Parish under a contract with the Police Jury. After delivering the building, he claimed extra compensation, which the defendant warmly opposed. From that time the defendant seems to have set himself up as the champion of the tax payers, and the redresser of parochial wrongs, probably not inflicted. He accused the plaintiff publicly of misdemeanors in his office of Treasurer, severely criticised the building he had erected for the Parish, and was heard to say in relation to that building that *King* had swindled the Parish. He was successful in preventing the plaintiff's re-election as Parish Treasurer. Shortly after these occurrences, the Supreme Court of the United States decided against the validity of the Maison Rouge Grant, within the limit of which the defendant's plantation is situated. There is every reason to believe that the plaintiff advised his overseer *Fife*, and one *John Reed*, to do the thing of all most offensive to a planter, to go and settle near the back line of the defendant, so that the pre-emption to which their settlements would entitle them, might include part of his lands. He went with them to show them the line, and *Reed* accordingly built a cabin and made a settlement.

In the succession of *John Bres*, there was a worthless stock of wild horses, which the neighbors were in the habit of shooting when they came among their gentle stock. The plaintiff acting as an appraiser in the inventory of the succession, appraised those horses at $5 per head, and subsequently purchased them at that price. After this purchase some of those horses found their way to the pasture grounds of the defendant by accident or otherwise, carried away his gentle stock to the swamp with them and caused him infinite trouble and great loss of time.

The plaintiff would occasionally send for them, but they invariably returned. The defendant sent a man to buy them for the purpose of sending them out of the neighborhood, but the plaintiff refused to sell. The defendant after repeated notices to him, that he would shoot that stock unless it was removed, caused them to be appraised by neighbors and had one of them shot, for which he immediately offered to pay. The plaintiff instead of receiving payment, instituted a criminal prosecution against him on his affidavit, that the mare shot by the defendant had been shot maliciously.

Pending this prosecution, which justly terminated in a verdict of acquittal, the defendant wrote and caused to be printed and circulated the letter to the plaintiff which has given rise to this litigation.

The petition alleges that this publication contains the following false, scandalous and libelous charges against the plaintiff :

1st. That he devised a plan to have the defendant murdered by *Reed* and *Fife*, when he told them that the defendant had said he intended to shoot them for making a settlement back of his plantation.

2d. That he committed perjury in the affidavit in which he swore that the defendant had shot his mare maliciously.

3d. That he was guilty of improper conduct as Parish Treasurer, and connived with the commissioners of the Parish to defraud the Parish in the building of the Courthouse.

4th. That he was guilty of larceny by putting his brand on horses which did not belong to him, and by taking possession of a dead man's horse without title.

The plaintiff claims $25,000 damages.

The answer denies all the allegations in the petition not expressly admitted. It contains an averment that the several allegations against the plaintiff made in the publication complained of, are true as therein stated ; and that the defendant is prepared to prove the truth thereof, but he denies that he has charged the plaintiff with larceny or with a combination with the commissioners to defraud the Parish, or with corrupt motives for his remisness as Parish Treasurer.

The defendant further avers that so far from having caused the plaintiff any damage by propagating false and slanderous charges against him, he himself has been greatly damaged by the various false, defamatory and slanderous charges made against him by the plaintiff, and that the publication complained of, was necessary to his personal safety, and to counteract those charges. He then reiterates the charges of which he complains and claims $25,000 damages in reconvention.

The plaintiff excepted to the claim in reconvention; the exception was sustained, and the claim dismissed. The defendant insists that there is error in this ruling of the Court, and that his demand in reconvention should have been entertained. The District Judge has not stated the reasons upon which he dismissed it, but there is an obvious one, upon which the decision must be sustained. The publication complained of, bears date of the 4th September, 1849, and the answer of the defendant was not filed till the 2d of November, 1850, more than a year having elapsed between the two dates. The defendant could no longer have brought an action for injurious words spoken or written by the plaintiff at or before the date of the publication, and cannot therefore assume the character of a plaintiff in reconvention, for any injurious words spoken or written at or before that time. Civil Code, 3501. If on the other hand, the injurious words complained of, have been spoken or written since the publication, they have no necessary connexion with the plaintiff's demand, and cannot form the basis of a claim in reconvention.

On the merits we have already stated that the verdict of the jury was for the plaintiff. In a case so peculiarly within their province, in which so many witnesses known to them have been examined, and such a wide range given to the defendant to make out his defence, nothing short of manifest error would justify us in setting aside the verdict, so far at least as it settles the facts of the case. This is a rule from which we have never deviated in cases of fraud and slander.

Our examination of the testimony so far from convincing us that there is manifest error in the verdict, has brought our minds to the conclusion that it is in strict conformity with the evidence.

Many of the facts stated in the publication are shown to have been literally true, but with the exception of the criminal prosecution for shooting the mare, they have all been satisfactorily explained. The inferences, therefore, which the defendant intended should be drawn from them, and for which the publication seems to have been made, had nothing to rest upon, and the jury properly

inferred malice. The defendant himself admitted in argument that when he propounded to the plaintiff the questions contained in the publication, in rela-tion to the horses of *Larche* and of the Ditchers, which had been branded with his brand, and also in relation to *McLain's* horse, he did not believe that the plaintiff had knowingly and intentionally branded and taken possession of those horses with a criminal or dishonest intention. This is a clear admission that the charges which those questions imply were false, and therefore malicious.

Without examining the evidence in detail, we deem it sufficient to say, that we are all fully satisfied with the verdict so far as it settles the fact of malice against the defendant, but we are of opinion that considering all the facts of the case, the damages allowed are excessive. Whatever may be the rule of the common law on the subject of damages in actions of slander, we consider it settled that under the textual provision of Article 1928 of the Code, the discre-tion given to the jury in actions of that kind is never unlimited, and that although their verdict should not be disturbed on slight grounds, there are limits beyond which the law makes it our duty to interfere. See *McGary* v. *City of Lafayette*, 4 Ann. 440.

Under the peculiar circumstances of this case we do not think that the failure of the defendant to prove the charges alleged in the answer to be true, is an obstacle to the reduction of the damages. The power to reduce them in all cases is clearly given, and we think this a proper case for its exercise. Although we do not deem it necessary to enlarge upon all the circumstances which have brought us to this conclusion, we think proper to mention two of them particularly : The manner in which the prosecution of *Ballard*, for shoot-ing the mare was pressed by the plaintiff; and the assault and battery commit-ted by the plaintiff, after the publication of the libel, upon the person of the defendant, a man, his inferior in bodily strength and much advanced in years. This was to some extent taking the law into his own hands.

Both parties are in fault. The plaintiff suffered his evil passions to get the better of his judgement, when he had the defendant indicted. The defendant subjected himself to the same reproach in making the publication complained of. We consider it however a matter of justice to both parties to say, that on the one hand the evidence is insufficient to establish perjury on the part of *King*, and that on the other hand, there were circumstances known to *Ballard*, but unknown to *King*, which may have created a reasonable suspicion in *Bal-lard's* mind, that *King* had sworn beyond what he knew to be the truth.

Although authorized to curtail the judgment we are not at liberty in such a case as this, to reduce the damages to what would be a bare compensation for the probable injury sustained. After the finding of the jury we feel bound to allow such a sum, as in the exercise of a sound discretion they might have allowed. Had the verdict been for as much as $5,000 we would not have inter-fered with the judgment, and we will now render it for that sum.

It is ordered that the judgment in this case be reversed ; it is further ordered that there be judgment in favor of the plaintiff and against the defendant for five thousand dollars. It is further ordered that the costs of the District Court be paid by the defendent and those of this appeal by the plaintiff and appellee.