DORE, Judge.
This is a suit by plaintiff, Clifton Grissom, for damages for permanent and total disability, pain and suffering and medical expenses sustained by him in an automobile accident on April 19, 1949, at the intersection of Ninth and Bank Streets, in the City of Lake Charles, while he was riding as a guest in the center of a station wagon belonging to Harless Lumber Company, Inc., and being driven by an employee, Johnny Chamberlain, while in the course and scope of his employment, south on Bank Street, when the station wagon was run into by a Chrysler convertible automobile driven by Roy Heard in an easterly direction. When the two motor vehicles collided, plaintiff was thrown but of the station wagon arid received the injuries which are the basis of this suit. • ■
The Lumbermen’s Mutual Casualty Company of Chicago is the insurer of both motor vehicles involved in the collision, having insured Roy Heard against public liability for bodily injuries to the extent of $20/40,-000.00, and the Harless Lumber Company, Inc., against the same liability to the extent of $100/300,000.00. Roy Heard and the Lumbermen’s Mutual Casualty Company are made defendants..
The trial judge, in his written reasons for judgment, found “that plaintiff’s injuries and present disability are the direct result of the collision which was caused by Heard’s negligence, and as. a result, the defendants will be cast in damages.” He further found “that the plaintiff is permanently and totally disabled from doing the work which he had done continuously for 28 years, and the evidence further shows that at the time of the accident the plaintiff was 51 yea.rs of age, with a life ■ expectancy of approximately 19 years.” For the permanent and. total disability and pain and suffering, he awarded the sum.of $15,000.00, and for hospital and medical expenses incurred, by plaintiff, he awarded thé sum'of $992.76.' Defendants have appealed and are asking that the judgment be reduced. The plaintiff has answered the appeal and is asking that the judgment be increased to the total amount of $17,500.00.
The hospital and medical expenses are not qüestioned. The sole issue before us is the quantum to'be allowed the plaintiff. In determining that question, there are no set rules for our guidance. Each case must stand' on its particular facts, the injuries received and its consequences. However, we do endeavor to maintain some standard of uniformity and consider the ability of the' defendant to pay and the decreased purchasing power of the dollar.
• The record discloses that plaintiff, at the time of the accident, was a fifty-twoyeár' old man, healthy, active, vigorous and hardworking, following a highly skilled profession as a lumber grader, and was earning $76.25 per week. As stated, supra, he was riding'in the center of the front seat, between the driver and another' guest of the station wagon. As a result of the collision, the plaintiff was thrown out of the station wagon in an unexplained manner and landed partially on the concrete curb, on his back, on Bank Street.
In his reasons for judgment, the trial judge found that plaintiff received serious injuries to the bony structure of his body, to his muscles, organs and nervous system.' He states:
“The Court therefore concludes that all of plaintiff’s present disability is due largely and entirely to the injuries he received in the accident. There is no question but that the plaintiff suffered severe and excruciating pain immediately following the accident and for several weeks thereafter. There *110 were several ribs fractured. He evidently ■had a ruptured kidney and a collapsed lung. He suffered brush burns and abrasions over a considerable part of his body. He was unconscious the major part of the time for approximately four days after the accident and required sedatives for a considerable time after the accident. According to the plaintiff and his wife, he has not had a full night’s sleep in bed since the accident.”
His conclusion is amply supported by the testimony of Dr. DiGiglia and Dr. Hatch-ette as to the physical injuries.
We may state at this time that Dr. DiDiglia found the patient, plaintiff, in complete shock and states, in answer to a question, “What was his general condition there for several days after receiving these injuries, Doctor?” — “I truthfully didn’t think he would get over it.” Dr. Hatchette, amongst other injuries, found “fractures of the transverse processes of the lumbar vertebrae from, one to four, inclusive.” He states that “fractures of the transverse processes are notoriously painful. They throw, or rather, they cause the muscles to become imbalanced (sic) if they are not present to stabilize the action of the muscles. In other words, if a muscle which is attached to the end of the transverse process is not stabilized properly because that process has no stabilization, then the muscle itself is not stabilized.” He found that the fractures of the transverse processes had not healed normally, but had developed separate ossicle formations in the first three mentioned, that is, from lumbar one to three, inclusive, and consequently, the muscles attached to these transverse processes were not stabilized and that plaintiff would, in all probability, have low back pain because these muscles would go into spasm.
As previously stated, the trial judge found that the plaintiff was permanently and totally disabled from carrying on his occupation as a lumber grader. The record fully justifies such a conclusion. He had continuously followed this occupation for 28 years as his chosen field of endeavor. The occupation of lumber grader requires the grader to stand, move about, climb stacks, bend down and turn over lumber. According to the testimony and especially the testimony of Dr. DiGiglia and Dr. Hatchette, the plaintiff is totally and permanently disabled to perform the duties of a lumber grader.
It may be stated at this time that plaintiff was examined, at the request of defendants, by Dr. R. Gordon Holcombe, Jr., and Dr. Kingsley. Neither of these doctors was called to testify. It was stipulated that their testimony would be in accord with that of Dr. DiGiglia and Dr. Hatchette. Thus, we have no conflict in medical testimony as to the present physical condition, which condition is the direct result of the accident and resulting injuries, which disables plaintiff from performing the same type of work that he was performing at the time of the accident and injuries, and which is permanent.
Defendants, in the lower court and in this court, contend that plaintiff is presently suffering from an arthritic condition which existed prior to this accident. Anent this contention, we find that the lower court correctly solved this contention against the defendants. In his written reasons, the trial judge states:
“Defendants contend that plaintiff’s present condition is due partially to arthritic changes which had occurred in plaintiff’s back at the time of the accident and were in evidence now. According to the testimony of the physicians, the processes on some of the vertebrae had been fractured and they had not reunited so that presently the muscles of plaintiff’s back are not attached to any rigid bony structure, but are attached to movable pieces of the spinal processes, and consequently, with any movement of the back plaintiff suffers severe pain.”
Considering the fact that plaintiff is now permanently and totally disabled to work, considering that he has a life expectancy of approximately 19' years, or 988 weeks, and that he was earning a weekly wage of $76.25, or expectancy of a total sum of $75,335.00, an award of $15,000.00 cannot be said to be excessive. To the contrary, we feel that it is inadequate. We fix the, amount at $17,500.00, the amount prayed for in the answer to the appeal.
For these reasons assigned, the judgment appealed from is amended by increasing the award from $15,992.76 to $17,500.00, and as thus amended, the judgment is affirmed.