**GILLEN v. PHOENIX INDEMNITY CO.**

No. 13781.

United States Court of Appeals
Fifth Circuit.

June 24, 1952.

Rehearing Denied July 31, 1952.

John A. Dixon, Jr., Harry V. Booth, Shreveport, La., for appellant.

Vernon W. Woods, John M. Madison, Shreveport, La., for appellee.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

This appeal questions again the propriety of a judge of a Federal Court in Louisiana, in his instructions to the jury trying an action for the recovery of damages for pain, suffering and personal injury, directing the jury to consider, as a guide for its finding, the quantum of damages which may have been awarded by the State Courts in what the Federal Court determines to be somewhat similar cases which have been tried and determined by the judges of the State Courts of Louisiana. In Dowell, Inc., v. Jowers, 5 Cir., 166 F.2d 214, 2 A.L.R.2d 442; Dowell, Inc., v. Jowers, 5 Cir., 182 F.2d 576, and Lumbermens Mutual Casualty Co. v. Hutchins, 5 Cir., 188 F.2d 214, all from the State of Louisiana, we have held such a charge to be erroneous. The confusion resulting from such a charge to the jury was also recognized in Mutual Life Ins. Co. of New York v. Daigle, 5 Cir., 142 F.2d 1000, and, in a case from Mississippi, Wood v. Morrow, 5 Cir., 119 F.2d 776. We could, therefore, well rule

the present case without any further discussion, for the appellant's contention of error is plainly sustained by these prior decisions. However, since in this, and another case likewise pending before us, State Farm Mutual Automobile Ins. Co. v. Scott, 5 Cir., 198 F.2d 152, but in which the situation is reversed because the trial Judge in that case followed our prior rulings and refused such an instruction, (and likewise refused to permit counsel to argue to the jury the question of quantum in the light of "similar cases" in the State Court), it is contended that in the former cases the point at issue

was not fully developed, or all grounds in support of the correctness of such a charge presented, and that there are here material differences in the nature of the Court's instructions to the jury, which require a different result in this case, we will consider and further briefly discuss the proposition, even though not required to do so.

The instruction of the Court here challenged so portrays the nature of the question and embodies all substantial features of the appellee's argument as to why such a charge is proper that we set it forth below.[1] These, in summary, are that the rule en-

1. "Members of the jury, if you decide the plaintiff or plaintiffs are entitled to recover, the quantum or the amount of recovery in a situation of this kind, is one of mixed fact and law. The facts as to the nature and extent of the injuries are something for you alone to decide.

"You likewise decide the question of fact as to the extent and duration of any pain and suffering which the claimant may have experienced. When you come to the items of pain and suffering, the decisions of the courts of the state of last resort, in cases substantially similar to the one in hand, are guides to be considered in fixing the amount of recovery. Of course, the period of duration and the intensity of suffering may vary, and you are to consider the facts proven in this particular case in evaluating this element.

"In other words, some individual may have strong nerves and not suffer as much pain as another.

"You have seen this lady on the stand. You have observed her in the courtroom and you can take into consideration in determining the extent to which she may have suffered what the evidence tends to show that she had experienced.

"In trying this case, you are administering the law of Louisiana. There is no Federal common law right of action in tort. It has been held that the decisions of the Court of Last Resort of the State, as well as the statutory laws, control in these cases, and it is this law which you should apply. It is true that no two cases are ever exactly the same and for this reason you are not conclusively bound to fix an amount identical with that in any other case to which I shall refer; but as stated above, they should be treated as guides to the end that litigants should not be permitted to recover in this court sums greatly in excess of what the state law and jurisprudence would allow if the cases were tried in the

courts of the state. Any such great deviation of increase in recoveries in this court would lead to a situation equally undesirable and incongruous, as it would be if the defendants in such suits were able to prevent a fair recovery, reasonably comparable with that which could be had in the state courts, by removing such cases to this court, as they undoubtedly have the right to do because they are citizens of other states. In other words, neither litigant would be permitted to reap substantial advantages because of choosing this court or forum for the determination of his rights in litigation; but we should try as nearly as possible to follow the state courts in their interpretation of its laws.

"The difference between the procedure for the determination of an injury in the state courts as compared with the Federal Court is that in the state court the judge of the court is a judge of the facts as well as of the law. That is not true in the Federal Court. Under the jury system the jury is the exclusive judge of the facts and in passing upon those matters the judges in the state court decide the law and the facts and they decide the quantum which is, as I charge you, a mixed question of fact and law, because you see those courts citing from time to time their prior decisions as to the amounts allowed in other cases for similar accidents.

"As I want to emphasize, members of the jury, these decisions are not such that you must follow exactly what has been done or said in those cases. They are guides in order that this court, sitting as a court to administer the law of Louisiana, should not be a haven to which either side could go in order to get something more or something less out of these cases than they would get in the state court. Normally, they should be in the state court where the parties or-

forced in the Courts of the State of Louisiana, by which past decisions on .quantum are referred to in subsequent cases as a guide by which a fair standard of damages for particular hurts can be estimated and the uniform practice of such Courts in doing so to secure a reasonable uniformity of awards, declares and constitutes the substantive law of Louisiana, and that the Federal Courts, under the doctrine of the

dinarily prosecute their actions. The situation is different than what it would ordinarily be. Usually, the non-resident is the one who seeks the Federal Court but these are all cases where the plaintiff seeks the Federal Court. In other words, a citizen of Louisiana comes in here to have his rights determined in this Court.

"I have felt in my attempt to administer the law that it is my duty to charge you in the manner and in the sense which I am doing now and which I have done in these other cases. If I am wrong about it then the courts of last resort will so decide, but it is my honest conception of what the law is and I am following it.

"If you want to take any exception to that at this time, Mr. Booth, you can do so.

"Members of the jury, in attempting to fellow the course which I have just outlined in this case I give both sides the right to pick the cases out of the Louisiana Jurisprudence as near in their facts and the extent of injuries, and things of that kind, as they are able to find, just as the courts of the state pick them out and cite them in their decisions, and in this instance counsel knew that and it so happens that only one case has been presented and that is a case by the defendant and it is a case where the facts are substantially similar to the facts in the present case. So, I am going to read to you from that decision. The case is that of Ardoin versus Robinson reported in 176 Southern Page 228, a decision by the Court of Appeals for the Second Circuit. The Court of Appeals is the court of last resort on damage suits except the Supreme Court may issue a writ and review, change or reverse the decision of the appellate court.

"After discussing the case at length as to the issues and facts, and so forth, on the question of liability which has been conceded in the present case, the Court had this to say:

" 'As already stated, the impact against the car in which the plaintiff was riding was rather severe—' in other words, she was hit from the back, as is true here— 'throwing her backwards, forwards and sideways against the solid parts of the car. She received a severe bruise or contusion on her right arm and an abrasion on her back. This violent shock was sufficient to give plaintiff a severe jar and jolt, and, in a person of her age— sixty-two years' this plaintiff was sixty-seven 'could easily have injured her back.

" 'She immediately complained of pain in her back, and continued to do so from the moment of the accident. She had never complained of pain in her back before the accident, although she had suffered from high blood pressure and spondilitis —inflamation of the joints of the spine. Therefore, we must conclude that she is either faking a back injury and has fooled several people, including some reputable doctors, or else we must find that she actually received an injury to her back, even though it may not be to the same extent as she has endeavored to show by the testimony.

" 'We are much impressed with the truth of the statements made by two of the doctors to the effect that because an x-ray may not show a fracture is not an absolute assurance that none exists for the reason that so much depends on the position of the patient—'

"There was a question of whether the spine was fractured and that is not important at this time. There is no such contention here.

" 'Plaintiff was suffering from spondilitis—which is arthritis of the back—before the injury. A decided majority of the doctors state that spondilitis would likely be reactivated or aggravated by such a jolt and shock as plaintiff sustained. As one doctor describes it, the spondilitis would likely be lighted up by such a shock.

" 'The fact that the plaintiff has suffered pain in her back since the accident when none existed before, coupled with the fact that the preponderance of the medical evidence shows that a shock of the nature sustained by plaintiff would probably aggravate and reactivate the spondilitis condition, justifies the conclusion that plaintiff has suffered a back injury.

" 'It is true that two of the doctors state that the x-rays examined by them show no reactivation or aggravation of the spondilitis condition. But they do not show how they can be sure of this opinion from the examination of x-rays made only three or four months apart.

Erie case,[2] must by their instructions require the jury in the Federal Court to do likewise in order that the outcome of litigation in the Federal Court may be substantially the same, so far as legal rules determine the outcome of the litigation, as it would be if tried in the State Court.[3] On the other hand, the appellant denies that any such rule prevails in Louisiana. It is contended that Louisiana jurisprudence enforces no such standard for measuring damages for personal injuries; that in practice there are no jury trials on such questions in such cases, but that the trial Courts determine, and the Appellate Courts review, revise and adjudge, such cases and the amount of damages proper therein as a matter of law and fact and that there is no authority indicating that awards made in other cases constitute a part of the law of Louisiana so as to require comparison and control in the adjustment of such damages in other cases.

It is further contended that even in the rare instances of jury trials in the State Courts of Louisiana the law forbids expression upon the facts of the case by the judge in his charge.[4] The basis of the argument is that the amount of damages to be awarded in a personal injury suit is a question of fact, that the Court should not suggest a proper amount of award, and that the Court's instructions which seek to have the jury consider awards in other cases as guides, as this is admittedly so considered by judges in the Louisiana Courts trying cases without a jury, effects an abrogation of the right of trial by jury as guaranteed by the Seventh Amendment to the Constitution of the United States.

Upon further consideration of the question we find no reason authorizing a departure from the rule which we have previously announced which, while not expressly stated, embodies the proposition that such an instruction is not compatible

In any event there is too much evidence by lay witnesses to the effect that plaintiff did suffer pain in her back after the accident for us to ignore it and conclude that she is faking an injury when none exists.'

"Then they got down to the question of quantum. I have read you that part of the case about the injury and the age of the lady, and so forth.

"This is a conclusion they read (sic): 'In addition to suffering pain since the accident, plaintiff has been unable to do the house work which she did before. She has not been confined to her bed all the time, but has been up and down, and has been under the treatment of a doctor since two days after the accident. She has incurred a doctor bill with Dr. Sorrells for $250 and Dr. Hatchette for $15. She is entitled to recover these items. We think she is entitled to recover a substantial amount for mental and physical pain and suffering.'

"There is no dispute about the hospital and doctors bills.

"'We have decided to fix this item'— That is, the mental and physical pain and suffering—'at $1,000. We do not think the evidence justifies an award on any of the other items of damage claimed, such as loss of life expectancy—' and so forth and so on."

*       *       *       *       *

"Members of the jury, the figures I

read you from this decision, of course, we can all take notice does not represent the value of money today. If you take that as a fair criterion; that that case is comparable to this and the plaintiff is entitled to recover, or would have been in 1937 entitled to recover substantially a similar amount, then you have to take into consideration the depreciated value of the dollar and increase that in accordance with what you believe the loss of the purchasing power of the dollar has been so that its present value would apply instead of the value of money at that time; whether it be one hundred percent or seventy-five percent, or more, whatever you may find it to be is what you should increase it to."

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

3. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

4. The Louisiana Code of Practice, Article 516: "In this charge the judge must limit himself to giving the jury a knowledge of the laws applicable to the cause submitted to them, and he shall abstain from saying anything about the facts, or even recapitulating them so as to exercise any influence on their decision in this respect." Varillat v. New Orleans and Carrollton Railroad Company, 1855, 10 La.Ann. 88, 89.

with the historic function of the jury in fixing in each case the proper award to be made for the injuries sustained and pain and suffering endured in the light of the circumstances of the case then and there being tried and presented to the jury. It is true, as shown by the Louisiana State Courts decisions, that the judges of those Courts with practical uniformity use the determination in previous cases as a guide by which to estimate damages for the particular hurts presently before them for consideration. This is clearly shown by the cases cited by the appellee.[5] However, these cases also recognize that "no hard and fast rule can be laid down for fixing damages in cases of this kind, other cases merely serving as guides." Wilcox v. B. Olinde & Sons Co., supra, [182 S. 154]. The cases cited by appellant[6] support the statement that "in Louisiana there is no standard and no monetary measure limiting recovery, statutory or judicial." In Grissom v. Heard, 47 So.2d 108, 109, the Court of Appeal of Louisiana, says: "The sole issue before us is the quantum to be allowed the plaintiff. In determining that question, there are no set rules for our guidance. Each case must stand on its particular facts, the injuries received and its consequences. However, we do endeavor to maintain some standard of uniformity and consider the ability of the defendant to pay and the decreased purchasing power of the dollar." The guide which the judges of Louisiana Courts employ is, in effect, the means which they have adopted for determining the fact of quantum. It must be conceded that their adherence to former cases as "guides" as a means of enforcement of uniformity is a matter of law. Nevertheless, quantum is recognized as a question of fact. In the State Courts both of these questions, law and fact, are determined by the judges, who are experienced and able to discriminate and make allowance for factual differentiation. Such procedure, or method of judgment, can not be employed in instructing the jury without violating the well recognized principle which forbids the judge to suggest the proper amount of award. It is also evident that a charge of the nature here complained of offers as a standard of comparison not the facts which the Federal Court jury might find upon consideration of all of the evidence in the "substantially similar case", but only the conclusions which the judges of the State Courts have reached thereon. Manifestly, such a method does not lend itself to proper employment in the case of a jury trial in the Federal Court under the Seventh Amendment. The Constitutional requirement must, of course, be enforced in a suit for damages before a jury in the Federal Court. It is conceded that the fundamental basis of the right of recovery of such damages is that set forth in Article 2315, of the Louisiana Statutes Annotated—Civil Code, which provides that "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it". Damages are given as an attempt to effect such reparation. In a trial before a jury in the Federal Court what constitutes such reparation is a question of fact to be determined by the jury, subject, of course, to the well recognized right of the trial judge in a proper case to set aside such a finding or direct a remittitur. Proper consideration of the historic separate functions of the judge and jury in such a trial leaves no room for doubt that only disruption and confusion could result from the importation into such a trial of the method employed by *judges* in seeking assistance from prior awards in similar cases in making their determination of the proper award in a case then before them. We do not find that such procedure has established,

5. McGary v. City of Lafayette, 4 La.Ann. 440; King v. Ballard, 10 La.Ann. 557; Rice v. Crescent City Railroad Co., 51 La.Ann. 108, 24 So. 791; Towns v. Vicksburg, S. & R. Railroad Co., 37 La.Ann. 630; Brook v. Interurban Motor Transportation Co., 156 La. 286, 100 So. 428; Eleazar v. Illinois Central Railroad Co., La.App., 24 So.2d 387; Cavicchi v. Gaiety Amusement Co., La.App., 173 So. 458; Wilcox v. B. Olinde & Sons Co., La.App., 182 So. 149; Matheny v. United States Fidelity & Guaranty Co., La.App., 181 So. 647.

6. Baird, et ux. v. Employers' Liability Assur. Corp., Ltd., La.App.1949, 38 So. 2d 669, 674; Trascher v. Eagle Indemnity Co. of New York, La.App.1950, 48 So.2d 695, 701.

as the substantive law of the state, a binding restriction or limitation on the amount of damages permitted to be recovered which should be enforced by the Federal Court by instructing the jury in such Court to use the amount of damages theretofore awarded in other cases as a guide for their ascertainment of the proper amount of recovery in the case which they are then determining.

We have no doubt as to the correctness of our conclusion. However, if it be thought that it may be induced by our experience with, and understanding of, the function of the jury under the common law, and by unfamiliarity with Louisiana jurisprudence, where the common law does not prevail, we may recall that Judge Lee and Judge Borah, both longtime Louisiana lawyers and jurists of exceptional ability, authored the decisions in Mutual Life Ins. Co. of New York v. Daigle, supra; Dowell, Inc., v. Jowers, supra, and the second Dowell case, supra.

The charge of the trial Court complained of was erroneous and the giving of it requires reversal of the judgment and the grant of a new trial.

The matters complained of by the remaining assignments of error, considered apart from the fundamental error in the substance of the charge, are not shown to have prejudiced the appellant and, moreover, are not likely to recur upon another trial.

Judgment reversed.