McINNIS, Judge.
This suit is by Mrs. Annie C. Gannaway against her daughter, Miss Anne Ganna-way and her public liability insurer, National Surety Corporation and Joe. Taylor, for personal injury and medical and other expenses incurred as a result of injuries sustained when the automobile of Miss Gannaway, in which plaintiff was a guest passenger, collided with one owned and being driven by Joe Taylor, in the city of Bastrop, Louisiana, at a point where South Haggerty Street makes a T intersection with West Madison Street. The accident happened about 11:30 to 11:45 a. m. on December 26, 1950.
The following acts of negligence are charged to Miss Gannaway:
(a) Immediately prior to and at the time of said accident said Anne Gannaway was proceeding at an’ excessive rate of speed under the circumstances prevailing at the time and place of the accident.
(b) That said Anne Gannaway failed to have her automobile under proper control so as to be able to stop and thus avoid a collision with the automobile driven by said Joe Taylor.
(c) That said Anne Gannaway did not keep a proper lookout for danger whereby she could have avoided the accident after the said Joe Taylor began to make a left turn into the path of the automobile being-driven by Anne Gannaway.
It is charged that Taylor was negligent in attempting to make a left turn into South Haggerty Street from West Madison Street when he failed to keep a' proper lookout and failed to see the automobile of Miss Gannaway.
Other allegations of the petition set forth that the weather was cloudy and misty and the pavement wet and slippery, and that Miss Gannaway was driving at a speed of not less than 35 miles per hour in violation of the law; the injuries sustained by plaintiff, for which she démands $25,000 and medical and other expenses $1,561.99. ,
The answer of defendants, Miss Ganna-way and her insurer, admits the insurance coverage, and happening of the accident and that plaintiff was injured and hospitalized, but denies any negligence on the part of Miss Gannaway, and charges that the negligence of Joe Taylor, as alleged-by plaintiff, was the sole, only and proximate cause. In the alternative, it is alleged that if Miss Gannaway be found guilty of *354 any negligence, that plaintiff was on the front seat of the automobile and had equal opportunity to see and observe, that she failed to protest or suggest, and that she acquiesced in all particulars in the manner in which the automobile was operated, and in all things done by Miss Gannaway, all of which constitutes independent and contributory negligence precluding recovery herein.
Joe Taylor did not make any appearance, and when the case was called for trial plaintiff asked that the suit be dismissed as to Taylor, reserving all rights against the other defendants.
After trial on the merits, judgment was rendered and signed awarding plaintiff $1,-561.99 for expenses, $10,000 for her injuries and $5,000 for pain and suffering, a total of $16,561.99, less credit for $1,000 paid on the medical expenses, as provided by the insurance policy.
From the judgment defendants prosecute a suspensive and devolutive appeal, and plaintiff has answered the appeal, asking that the award to her be increased by $10,000.
The district judge has favored us with written reasons for the judgment. From our appreciation of what the record discloses we are not in full accord with all of the findings of facts as set forth in these written reasons, however, this may not be cause for reversing his finding of negligence on the part of Miss Gannaway. For instance, the finding that when Taylor started his left turn the Gannaway car was 300 feet away, is not borne out in the record. The district judge also concludes that Miss Gannaway was driving far in excess of 35 miles an hour, and this is not borne by the record.
The issue which is tendered in this case necessitates a conclusion as to the existence, vel non, of negligence — either causal or contributory — on the part of Miss Gannaway. We are therefore, not concerned with the question of the negligence of Taylor and though we note that the district judge exonerated him from any negligence we pretermit discussion of the point.
Our appreciation of the record is that the accident happened in the following manner: On the day in question, which was cloudy and misty and the pavement wet, Miss Gannaway was driving from her home in Monroe on the way to Wilmot, Arkansas. Enroute she would pass through Bastrop, Louisiana. She had as guest in the car, her mother, the plaintiff, riding on the front seat and Miss Louise Tarpley, a friend, riding on the back seat. They were to have lunch with relatives of Mrs. Gannaway at Wilmot and had started late, and were in a hurry. They reached Bastrop at 11:30 to 11:45 a. m. The record does not show the distance from Bastrop to Wilmot. Miss Gannaway was familiar with the roads and streets through Bastrop and had driven over the same route a number of times before. She had been driving fast, but when she got to Bastrop, slowed down to about 35 miles an hour.
There is a traffic light at the intersection. The street, on which she was driving east, is slightly curved for some distance from the intersection each way, the inside of the curve is on the north side of the street, and west several hundred feet from the intersection is a small hill, which, together with the curve, obscures vision of the intersection until the crest of the hill is reached, then it is down hill for some distance when another small hill begins and extends some distance east of the intersection.
As Miss Gannaway approached the intersection from the west, and Taylor approached it from the east, the signal light was green. Miss Gannaway says she probably speeded up some to try to make the intersection before the light changed to red. She saw cars, including that of Taylor, approaching the light from the east, and meeting her. She says she saw no hand signal by Taylor, indicating that he intended to turn south into South Hag-gerty Street, but Miss Tarpley saw Taylor turning left and warned her. Exactly how far she was from the light at that time is uncertain. Miss Tarpley thinks the warning was given at a telephone pole *355 185 feet from the intersection. Miss Gan-naway thinks it was about the church, which would be from 110 feet to 150 feet. She is uncertain about what she did, but thinks she did all she could to avoid the collision. The area through which she was driving is considered congested, being the Negro section of the city. There are residences, a Negro church and a Negro Catholic school, a Negro public school and some signs warning of 25 mile speed limit.
Joe Taylor says that he held out his hand indicating that he intended to turn left, for about a block, and that he kept his hand out until the collision occurred. He says he did not see Miss Gannaway’s car until it was less than 15 feet from him, and that, at that time, his front wheels were nearly to the south edge of the pavement, and that as soon as he saw the Gan-naway car he stopped so it would strike the front of his car instead of the middle of it. He also says the accident happened at about 1:00 o’clock p. m., which, of course, is incorrect. He also says he could not see the Gannaway car sooner because of the curve in the street. He says the light changed from green to caution as he reached the intersection.
Taylor’s wife testified that he held out his hand before reaching the intersection, but was not certain about the distance he held it out.
Mr. Robert H. Johnson was driving immediately behind Joe Taylor when the accident happened. He was not located until after the case had been tried, and it was reopened on motion of defendants, to take his testimony, and it was taken before the district judge at Monroe on October 10, 1952. This witness’ memory seems to have been faulty as to many of the happenings. He says he was driving immediately behind Taylor. He saw no hand signal of intention to make a .left turn, but because Taylor slowed down before reaching the intersection, the wit7 ness, concluded that he was going to wait for Miss Gannaway to pass, and then make his turn. He saw the Gannaway car when it was three-fourths of a block from the intersection. He says it was a clear sunshiny day, which is not correct.
He carried plaintiff to the hospital. He says she was shocked, but not bleeding or anything, when in fact’she had a cut on her head that was bleeding and required a number of sutures to close.
Though there is conflict in the evidence, we believe that a reasonable consideration of all the evidence leads to the conclusion that Miss Gannaway was negligent, and that her negligence in driving too fast and failing to keep her car under proper control was a proximate cause of the collision. There is no good reason why she should not have seen the Taylor car in time to avoid the collision if she had been keeping a proper lookout and driving at a lawful speed.
We do not believe plaintiff was guilty of contributory negligence. She had the right to rely on the driver of the car, unless some unusual circumstance put her on notice that the driver was toot properly operating the car. It is true that plaintiff was not keeping a lookout, but the car had been slowed down when it reached Bastrop, and she hardly had any reason to expect any unusual happening.
It follows that having reached these conclusions,’ plaintiff is entitled to recover for her injuries and expenses, so we turn now to a consideration of the award to be made.
So far as the expenses are concerned, plaintiff testified to each item and said each one is correct, just as itemized in the opinion of the district judge, and her testimony as to these items is not contradicted by any evidence in the record, so the award of $1,561.99, for expenses, will stand.
Plaintiff was 68 years of age at the time she was injured, but was in good health and active for a person of her age. She sustained a complete fracture of the left femur. It was broken off right at the neck. The right sternoclavicular joint was displaced upward, and this was not reduced on account- of the serious injury to her hip. She had a cut of about two *356 inches across her forehead, beginning from the right, extending upward and slightly to the left, which bled profusely until sutured. She was carried to the General Hospital at Bastrop where Dr. W. A. Rodgers sutured the cut on the forehead and made X-ray pictures of the fracture of the femur. She was also treated for shock. She was then carried to St. Francis Sanitarium in Monroe, arriving at about 4:30 p. m., the day she was injured. She was in the St. Francis 29 days at that time, and on January 4, 19S1 was operated on for reduction of fracture, and on April 14, 1951 she returned to the hospital for removal of Steinmann pins, but had to remain only until April 16. Early in April she developed a thrombosis in the left leg below the knee, and that caused pain and discomfort. The Steinmann pins caused pressure on the sciatic nerve and severe pain, until they were removed April 15, 1951. After that she complained of neuritis in the left foot. For some time she could be up only in a wheel chair. The fracture caused about a two inch shortening of the left leg and she wears a built up shoe on the left foot. At the time of the trial she could walk only with the aid of a crutch on the right side and a cane in the left hand, and the crutch under the right armpit caused discomfort on account of the displacement of the right sterno-clavicular joint.
Dr. J. W. Cummings, who with Dr. A. Scott Hamilton, treated plaintiff, is of the opinion that she will not ever be able to walk without the aid of a crutch. Dr. Hamilton did not testify at the trial, but by stipulation of counsel, a report written by him to plaintiff’s counsel, and a report written by Dr. Faheam Cannon to defendant’s counsel were filed in evidence. Dr. Hamilton’s report does not show that he made any prognosis.
Dr. Cannon’s report, after detailing his examination and findings, concludes as follows:
“In conclusion, this patient presents moderate scarring of the supraorbital area on the right and including the corresponding portion of the forehead, subluxation, chronic, mild, right sternoclavicular joint and partial anky-losis with pain, left hip joint, following fracture dislocation. The necessity for using a crutch in the right armpit aggravates the condition at the right sternoclavicular joint. .Disability with regard to that joint, as well as to the disfigurement of the forehead, in my opinion, is approximately 15% to 20% of the body. As for the left hip joint, I feel that there is 75% of disability, with respect to that extremity. The pain in the hip joint will cease only after the joint becomes completely an-kylosed or fused. It is too difficult to estimate the further time needed before the motion in the left hip joint is completely obliterated. The only improvement to be expected in the left hip joint will be the loss of pain.”
In support of plaintiff’s claim for increase in the award we have been cited the following cases: Grissom v. Heard, La.App., 47 So.2d 108; De Roode v. Jahncke Service, Inc., La.App., 52 So.2d 736; Sambola v. Public Belt R. R. Comm. of City of New Orleans, La.App., 56 So.2d 267; Preuett v. State through Department of Highways, La.App., 62 So.2d 686.
In the first three cases the plaintiffs were younger than Mrs. Gannaway, and all were earning substantial wages when totally disabled.
The Preuett case was defended solely on the question of liability, and no complaint made of the quantum. Mrs. Preuett had 15 years life expectancy and was much more seriously injured, and is permanently and completely disabled.
In supplemental brief, defendants have cited Jones v. Burke (Palmer v. Burke), La.App., 51 So.2d 322, on the question of quantum. Palmer received somewhat similar injuries as did the plaintiff in this case. Palmer’s age is not disclosed. Unless he was rather advanced in age we consider the award to him would be inadequate at this time.
We have considered the cited cases, and reached the conclusion that the *357 award to plaintiff is neither excessive nor inadequate.
It follows that the judgment appealed from is affirmed at the cost of defendants in both courts.