**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Henry Earl PALMER, Appellee.**

**No. 17182.**

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1959.

Rehearing Denied Feb. 19, 1959.

Schoeps v. Carmichael, 9 Cir., 1949, 177 F.2d 391, 398, certiorari denied 339 U.S. 914, 70 S.Ct. 566, 94 L.Ed. 1340.

Robert J. Vandaworker, Baton Rouge, La., Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for appellant.

Gordon M. White, Baton Rouge, La., Leon A. Picou, Jr., St. Francisville, La., White & May, Baton Rouge, La., Picou & Rarick, St. Francisville, La., for appellee.

Before RIVES, TUTTLE, and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment entered upon a jury's verdict awarding the plaintiff $7,950 for property damage and personal injuries received in an automobile collision. The accident occurred at 7:25 P.M., just after dark, on June 12, 1956. Both cars were traveling south on the Scenic Highway (U. S. Highway No. 61) near its intersection with the Northwest Bypass onto the Airline Highway at Baton Rouge, Louisiana. Another automobile, whose identity was never established, was in the lead traveling in the same direction. The unidentified vehicle momentarily hesitated in making a sudden unexpected turn to its right. In order to avoid striking it, the plaintiff rapidly reduced his speed from about 25 m. p. h. to about 5 m. p. h. and then pulled to his left to pass the turning car. The defendant's assured had been following the plaintiff's car at about the same speed. As the plaintiff's car slowed down and swerved to its left, Mr. Decker, the assured, was unable to stop before colliding with the rear of plaintiff's car.

The property damage was not great. A mechanic testified that:

"Well, the rear lower panel, right below—in between the bumper and the rear deck lid back in there, was bent—

\* \* \* \* \* \* \*

"The center bumper bar and the right and left bumper end was twisted down. This trailer hitch on the back went on ahead and went under it, twisted the center part down and each end of the bumper, and the left seat adjuster was knocked out of track.

\* \* \* \* \* \* \*

"That's the outfit to roll the seat backward and forward. I mean, it has a hook on there and it rolls on rollers.

1. Rule 50, Federal Rules of Civil Procedure, 28 U.S.C.A.

2. Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A.

\* \* \* \* \* \* \*

"And the left rear fender had a small bend in it."

The mechanic estimated the reasonable cost of repairs at $119.52.

The plaintiff and two men friends with him thought that none of them were injured by the jerk and jolt, and they continued on to their lodge meeting and dinner. Before the dinner was over, the plaintiff was feeling a dull ache and headache. The physician to whom he reported the following morning found that he "was suffering from a moderately severe whiplash injury involving principally the cervical region—which is the neck—together with a lesser extent of the lower lumbar region—which is the lower part of the back." Altogether, three physicians for the plaintiff and two for the defendant testified to the extent of the plaintiff's injuries.

The appellant insists upon six specifications of error. In the first three, it argues that the evidence did not justify a verdict for the plaintiff in the amount of $7,950. There was no motion for a directed verdict nor for judgment n. o. v.[1] The questions are preserved solely by the denial of a motion for new trial.[2] That ruling is subject to an extremely limited review for abuse of discretion.[3] We have carefully read and studied the record and exhibits, and we are of the clear opinion not only that the district court did not abuse its discretion, but also that the evidence was ample to support the verdict.

Appellant's counsel lays great store by a number of cases in which the Louisiana courts have awarded smaller amounts for whiplash injuries. One of the physicians testified:

"Each case of whiplash is a separate entity there and there is no rule that you can lay down to say, 'well this man will recover in two weeks;

3. Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914.

this man will recover in four weeks; this man will continue on the thing.' "

■ Even, however, if the injuries were factually identical, it is settled in the federal courts that juries are no more bound by what courts in Louisiana or elsewhere have awarded than they are by what other juries have awarded.[4] Each jury makes its own factual determinations, and, under the Seventh Amendment, its verdict cannot be re-examined in any court of the United States otherwise than according to the rules of the common law.

The fourth specification of error is that "The trial Court erred in submitting to the jury the issue of permanent injuries and/or disfigurement." The defendant objected to the use of the words "disfigurement" and "permanent" in the following portion of the court's oral charge to the jury:

"Now in estimating damages to be awarded if, as a matter of fact, you find that plaintiff's claim therefor is well founded, you may take into consideration the bodily injury suffered, the *disfigurement* resultant therefrom, if any there be, the *permanent* or temporary character of such injury or *disfigurement*, the physical and mental pain and suffering to which plaintiff has been or may hereafter be subjected by reason of such injury or *disfigurement*, the extent of the handicap or disability which you find is the outgrowth of the injury received in the accident and you may consider the health and condition of the plaintiff next preceding the accident by contract with his situation wherein such accident placed him." (Emphasis supplied.)

In an effort to meet the defendant's objection, the court then further charged the jury as follows:

"Ladies and gentlemen, there is some objection to the use of the word 'permanent' by the court in connection with the injuries; that is, in estimating damages I told you that you might take into consideration the permanent or temporary character of such injury and/or disfigurement. Now of course at no point in this charge does the court intend to suggest to the jurors what the facts of the case are. I have told you over and over, you are the judges of the facts and you will have to consider whether or not there is any evidence in this record that these injuries are permanent. There is some objection to the use of the word permanent in connection with those injuries. Now the charge has to be made to fit any facts the jury might find under the evidence but you have to inquire into the evidence as to whether or not there is any evidence here to support that the injuries were permanent."

Defendant's attorney still insisted: "I don't think that what Your Honor said to them will correct the error, in my opinion."

■ The trial took place two and one-half years after the accident, and even then the plaintiff could work only with considerable pain, according to his testimony and as several of the physicians recognized. There was medical evidence that "The sacrum, or the last part of the spine, was a little more horizontal than is usually seen," and "Also the X-rays showed some straightening of the lower cervical spine." The jury and the district court saw the plaintiff and were in better position to judge whether he was disfigured than is this Court. We think that the court's charge was proper. Certainly, it did not so affect the substantial rights of the parties as to be inconsistent with substantial justice. Rule 61, Federal Rules of Civil Procedure.

4. Gillen v. Phoenix Indemnity Co., 5 Cir., 1952, 198 F.2d 147; State Farm Mutual Auto Ins. Co. v. Scott, 5 Cir., 1952, 198 F.2d 152; cf. Wright v. Paramount-Richards Theatres, 5 Cir., 1952, 198 F. 2d 303.

The fifth specification of error is: "The trial Court erred in charging the jury on the duty of a motorist attempting to pass another vehicle when the evidence did not justify such a charge, and the verdict indicates said charge confused and misled the jury."

The charge objected to consisted simply of reading the pertinent statute:

"Now Chapter 233 of the Highway Regulatory Act [LSA–R.S. 32:233] provides: 'The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.' "

The instruction was not abstract because, admittedly, the plaintiff was trying to pass the unidentified vehicle. In any event, the charge was harmless to the defendant. Rule 61, supra.

The sixth assignment of error is: "The trial Court erred in charging the jury that the legal signal for stopping could be given by an electric device when that is contrary to R.S. 32:236 [subd.] A, particularly in the absence of evidence that the signal device involved in the instant case was an approved type."

The instruction referred to is as follows:

"Chapter 236a has to do with stopping and turning. 'The driver of any vehicle upon a highway of this State before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement. The signals herein required shall be given either by means of the hand and arm in the manner herein specified or by a mechanical or electric signal device approved by the Department, except that when a vehicle is so constructed, loaded or operated'—well, we need not go into that. 'The signal herein required shall be given either by means of the hand and arm in the manner herein specified or by a mechanical or electric signal device approved by the Department.' Now the stop signal provides—hand signal is arm extended downward at an angle of forty-five degrees from the shoulder or elbow."

In brief, appellant's counsel state:

"We frankly concede that the objection to this instruction on the grounds that the electric signal lights with which the plaintiff testified his car was equipped were not shown to be of an approved type was made for the first time after the jury had retired. We believe the point is of importance however and is the type of judicial error which should be noticed on the court's own motion. Dowell, Inc. v. Jowers, 5 Cir., 1948, 166 F.2d 214 [2 A.L.R.2d 442]."

We disagree and think that if the objection had been timely made it might, if necessary, have been met by proof that the almost new Chevrolet automobile had been equipped by its manufacturer, General Motors Corporation, with an electrical signal device of the approved type.

Finding no reversible error in the record, the judgment is

Affirmed.

On Petition for Rehearing.

PER CURIAM.

In our opinion we had stated that "the trial took place two and one-half years after the accident * * *." That is erroneous. The accident occurred on June 12, 1956, and the jury returned its verdict on December 10, 1957, approximately one and one-half years after the accident.

The appellant correctly points out that Whiteman v. Pitrie, 5 Cir., 1955, 220 F. 2d 914, 918, recognized a scope of appellate review of a ruling on a motion for

new trial broader than simply for abuse of discretion. It treated abuse of discretion as an error of law, referred likewise to failure to exercise the court's discretion upon such a motion, and stated that this Court could review questions of law presented by the decision of the district court on the motion for new trial. Our statement that the denial of a motion for new trial "is subject to extremely limited review for abuse of discretion," while admittedly somewhat ambiguous, was not meant to limit the rule as stated in Whiteman v. Pitrie, supra. The petition for rehearing is

Denied.